IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

OREGON WILD, an Oregon nonprofit
corporation; SIERRA CLUB, a
California nonprofit corporation;
and CENTER FOR BIOLOGICAL
DIVERSITY,

No. 1:12-cv-2244-PA

**ORDER**

        Plaintiffs,

   v.

KENT CONNAUGHTON, Regional
Forester, Pacific Northwest
Region; and UNITED STATES
FOREST SERVICE, a federal agency,

        Defendants, and

MT. ASHLAND ASSOCIATION, an Oregon
nonprofit corporation,

        Defendant-Intervenor.

_____

**PANNER, District Judge:**

    Plaintiffs Oregon Wild, Sierra Club, and Center for

Biological Diversity bring this action against defendants Kent

1  - ORDER

Connaughton, Regional Forester, and the United States Forest
Service.  Plaintiffs claim the Forest Service violated the
National Environmental Policy Act (NEPA) and the National Forest
Management Act (NFMA) in approving the proposed expansion of the
Mount Ashland Ski Area (the Project).  Mt. Ashland Association
has intervened as a defendant.

I conclude defendants are entitled to judgment on
plaintiffs' NEPA claims.  I stay plaintiffs' NFMA claims because
those claims are also at issue in a pending appeal, Oregon Wild
v. Connaughton, No. 1:05-cv-3004-PA, appeal docketed, No. 12-
35845 (9th Cir.).

## BACKGROUND

In 2004, after years of studying Mt. Ashland Association's
expansion plans for the ski area, the Forest Service issued a
final Environmental Impact Statement (EIS) and a Record of
Decision approving the Project.

In 2005, plaintiffs[1] filed an action challenging the 2004
final EIS and Record of Decision.  Plaintiffs claimed the Forest
Service had violated NEPA and NFMA.

I granted judgment for the defendants.  Oregon Natural Res.
Council Fund v. Goodman, No. 1:05-cv-3004-PA (lead case), 2007 WL
489272 (D. Or. Feb. 9, 2007).  On appeal, the Ninth Circuit

---

[1] Plaintiffs in the 2005 action included two of the three
plaintiffs in this action, Oregon Wild and the Sierra Club.

2  - ORDER

affirmed in part and reversed in part.  <u>Oregon Natural Res.</u>
<u>Council Fund v. Goodman</u>, 505 F.3d 884 (9th Cir. 2007).  On
remand, the Project was stayed while the Forest Service corrected
the errors found by the Ninth Circuit.

In 2011, the Forest Service issued a final supplemental EIS
and a supplemental Record of Decision, approving the Project.
Plaintiffs then filed this action.  While acknowledging the
Forest Service has corrected the NEPA violations cited by the
Ninth Circuit, plaintiffs claim the Forest Service committed
further NEPA violations by failing to prepare a supplemental EIS
on six categories of new information.  Plaintiffs also raise NFMA
claims.

**STANDARDS**

**I.  Summary Judgment Standards Do Not Apply**

The parties have filed cross-motions for summary judgment
under Federal Rule of Civil Procedure 56.  The legal standards
for summary judgment motions are "inconsistent with the standards
for judicial review of agency action" under the Administrative
Procedure Act (APA).  <u>Olenhouse v. Commodity Credit Corp.</u>, 42
F.3d 1560, 1579 (10th Cir. 1994).  Nonetheless, the Ninth Circuit
endorsed summary judgment motions as "'an appropriate mechanism
for deciding the legal question of whether the agency could
reasonably have found the facts as it did.'"  <u>City & County of</u>
<u>San Francisco v. United States</u>, 130 F.3d 873, 877 (9th Cir. 1997)

(quoting <u>Occidental Eng'g Co. v. INS</u>, 753 F.2d 766, 770 (9th Cir. 1985)). I consider "summary judgment" to be only a convenient label for the judicial review of challenged agency actions.

## II. Judicial Review under the APA

Under the APA, the court determines whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Before a court may overturn an agency decision under the APA's deferential standard of review,

> the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

<u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971) (citations omitted), <u>abrogated in part on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977). This court presumes the agency acted properly and affirms the agency when "'a reasonable basis exists for its decision.'" <u>Nw. Ecosystem</u> <u>Alliance v. U.S. Fish & Wildlife Serv.</u>, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting <u>Independent Acceptance Co. v. California</u>, 204 F.3d 1247, 1251 (9th Cir. 2000) (citations omitted)).

### DISCUSSION

## I. NEPA Claims

"Congress enacted NEPA 'to protect the environment by

4 - ORDER

requiring that federal agencies carefully weigh environmental considerations and consider potential alternatives . . . before the government launches any major federal action.'" Ctr. for Biological Diversity v. Salazar, 695 F.3d 893, 914-15 (9th Cir. 2012) (quoting Barnes v. U.S. Dep't of Transp., 655 F.3d 1124, 1131 (9th Cir. 2011) (internal quotation marks omitted)).

Plaintiffs contend the Forest Service should have supplemented the already supplemented final EIS to account for new information. "NEPA requires supplementation of any NEPA analysis in response to 'significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.'" Tri-Valley CAREs v. U.S. Dep't of Energy, 671 F.3d 1113, 1130 (9th Cir. 2012) (quoting 40 C.F.R. § 1502.9(c)(1)(ii)). "Supplementation is not required 'every time new information comes to light after the EIS is finalized. To require otherwise would render agency decisionmaking intractable, always awaiting updated information.'" Id. (quoting Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 373-74 (1989)). "Whether new information requires supplemental analysis is a 'classic example of a factual dispute the resolution of which implicates substantial agency expertise.'" Id. (quoting Marsh, 490 U.S. at 376). The court determines whether the agency acted arbitrarily and capriciously in deciding not to prepare a supplemental NEPA analysis, not whether the court agrees with the

5 - ORDER

agency's decision.  See Marsh, 490 U.S. at 385.

Here, plaintiffs argue that the Forest Service must conduct a supplemental NEPA analysis of six categories of allegedly new information.  I conclude the Forest Service fully considered each category of information and reasonably concluded none required preparation of a supplemental EIS.

### A.  Use of Allegedly Outdated Wetlands Delineation

The 2004 supplemental EIS used a delineation of wetlands that was completed in 2003.  That wetlands delineation has since expired under the standards of the U.S. Army Corps of Engineers (Corps).  The Corps is the agency with authority to issue permits allowing discharges into federal wetlands.

The record does not contain a wetlands delineation created since the one used in the 2004 supplemental EIS.  Without a new delineation, there is no way to know whether it would change the Forest Service's analysis.

The Corps is considering whether to issue a permit for the Project.  As part of the permitting process, the Corps will require a new wetlands delineation.  The Forest Service will not allow the Project to proceed until all required permits have been obtained.  The Forest Service stated, "If the new delineation varies sufficiently from the previous delineation to warrant a potential change in effects (unlikely in an alpine environment), then a review by Forest Service Specialists will be conducted."

6  - ORDER

Fed. Defs.' Mem. in Supp. 19 (quoting 3d Suppl. AR 1050).  I conclude the Forest Service did not act arbitrarily or capriciously on the wetlands delineation.

### B.  New Geological Mapping Information

The Oregon Department of Geology and Mineral Industries (DOGAMI) used new mapping technology to identify possible areas of landslides.  Plaintiffs claim DOGAMI's map is new information that requires supplemental environmental analysis.

The DOGAMI map describes the geology of Bear Creek Valley, which includes the Project area, but the Forest Service found the DOGAMI map was not "field verified and is not intended to be used for site-specific applications."  The Forest Service decided the DOGAMI information could not replace the agency's own mapping of potentially unstable terrain.

The Forest Service considered the DOGAMI mapping information, weighed its value, and concluded there was no need to supplement its original analysis.  This decision is within the agency's discretion because it concerns the usefulness of a technical or scientific method.

### C.  Information on Climate Change

Plaintiffs argue the Forest Service must consider multiple climate change studies issued since 2004.  The Forest Service did analyze many studies on climate change and concluded snowfall at the Project was not likely to be substantially different in the

7  - ORDER

next 20 to 40 years.

"A court generally must be 'at its most deferential' when reviewing scientific judgments and technical analyses within the agency's expertise under NEPA." <u>Native Ecosystems Council v. Weldon</u>, 697 F.3d 1043, 1051 (9th Cir. 2012) (citations omitted). The Forest Service's analysis of scientific studies about climate change falls within the agency's expertise. The Forest Service did not act arbitrarily and capriciously in declining to conduct further analysis of climate change's effects on the Project.

**D. Effect of Court Decision Invalidating Amendments to the Aquatic Conservation Strategy**

In 2007, a district court invalidated amendments to the Aquatic Conservation Strategy (ACS). <u>Pacific Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.</u>, 482 F. Supp. 2d 1248 (W.D. Wash. 2007) (<u>Pacific Coast</u>). <u>Pacific Coast</u> reinstated the unamended version of the ACS. The ACS is part of the Northwest Forest Plan and applies to the Project area.

Plaintiffs argue that because the 2004 final EIS used the amended ACS, the Forest Service must perform further analysis using the unamended ACS. The Forest Service responds that it did use the unamended ACS in its 2003 draft EIS, and later used the amended ACS in the 2004 final EIS. Because the Forest Service analyzed the Project under both versions of the ACS, there was sufficient information in the record to support the Forest Service's finding that the Project is consistent with the

unamended ACS.

**E. New Components of Project Allegedly Not Addressed**

Plaintiffs argue the Forest Service should perform a supplemental analysis based on "new components" in the Project. Plaintiffs cite the proposed renovation of the existing lodge, construction of an interim lodge, and replacement of one lift and changes to other lifts.

Defendants respond that the Mt. Ashland Association has not formally proposed building an interim lodge, or submitted plans for building or replacing ski lifts. Defendants contend that if Mt. Ashland Association renovates an existing facility, or replaces an existing facility with an upgraded facility with a similar footprint, it would be unlikely to change the environmental effects of the project. Plaintiffs have not shown that these alleged new components require additional analysis.

**F. Total Maximum Daily Load**

In 2007, the Oregon Department of Environmental Quality (DEQ) issued a Total Maximum Daily Load (TMDL) for sediment applicable to the Reeder Reservoir, which serves the City of Ashland. Plaintiff cite the new TMDL as significant new information requiring supplemental analysis.

Defendants respond that DEQ relied on the Forest Service's own Watershed Assessment to formulate the TMDL. Defendants cite DEQ's statements indicating it does not consider the Project to

be inconsistent with the new TMDL.

After considering the TMDL, the Forest Service reasonably concluded it did not need to supplement its analysis.   That conclusion was not arbitrary or capricious.

## II.   NFMA Claims

Plaintiffs claim that the Forest Service has violated NFMA. These NFMA claims are also at issue in plaintiffs' appeal of my order dissolving the injunction in the prior action.   <u>Oregon Wild v. Connaughton</u>, No. 1:05-cv-3004-PA, ECF No. 277 (D. Or. Aug. 17, 2012).

I do not address claims that are also at issue in a pending appeal.   I stay the NFMA claims pending the Ninth Circuit's ruling.   I will issue a judgment under Federal Rule of Civil Procedure 54(b) dismissing plaintiff's NEPA claims.

### CONCLUSION

Judgment is for defendants on plaintiffs' NEPA claims. Plaintiffs' NFMA claims are stayed.   Defendants' motion for summary judgment (#49) is granted only as to the NEPA claims. Plaintiffs' motion for summary judgment (#33) is denied.

IT IS SO ORDERED.

DATED this _3/_ day of January, 2014.


OWEN M. PANNER
U.S. DISTRICT JUDGE

10   - ORDER